## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**DANNY M. GREEN,**

        **Plaintiff,**

        **v.**

**WARDEN, CHILLICOTHE**
**CORRECTIONAL INSTITUTION,**

        **Defendant.**

        **Case No. 1:20-cv-381**
        **JUDGE DOUGLAS R. COLE**
        **Magistrate Judge Merz**

## OPINION AND ORDER

Petitioner Danny Green waited some four years after his state conviction became final to file his pro se petition in this Court for a Writ of Habeas Corpus under 28 U.S.C. § 2254. (Doc. 1). That matters because the statute of limitations for such actions is typically one year. Green argues that his delay in filing is permissible because tolling of one form or another fills the remaining three-year gap. The Magistrate Judge disagreed and issued a Report and Recommendation (R&R, Doc. 15) and Supplemental Report and Recommendation (Supplemental R&R, Doc. 20) recommending that this Court dismiss Green's petition with prejudice. Green objected to both. (Doc. 18; Doc. 21). The matter is now before the Court on the two R&Rs and Green's objections to them.

For the reasons discussed below, the Court agrees with the Magistrate Judge. Accordingly, the Court **DISMISSES** Green's Petition (Doc. 1) **WITH PREJUDICE**. Moreover, because no reasonable jurist could disagree with that conclusion, the Court **DENIES** Green a certificate of appealability under 28 U.S.C. § 2253(c)(2). And for

similar reasons, the Court finds that an appeal would not be in good faith under 28

U.S.C. § 1915(a)(3) and **DENIES** Green leave to appeal in forma pauperis.

## PROCEDURAL HISTORY

**A.      The State Court Proceedings**

On January 23, 2013, the Middletown, Ohio, Municipal Court issued a criminal

complaint against Green, charging him with rape. (State Ct. R., Doc. 6, Ex. 1, #46).

He appeared on that complaint two days later, and the court held a preliminary

hearing on the charge on February 1, 2013. (*Id*.). The court ordered him held subject

to posting a $500,000 bond. (*Id*. at #47).

On March 6, a grand jury in Butler County, Ohio, followed up by indicting

Green on four counts of rape of a person less than 13 years of age in violation of Ohio

Revised Code § 2907.02(A)(1)(b) (Counts 1, 2, 3, and 6), one count of attempted sexual

battery in violation of Ohio Revised Code § 2923.02(A)/2907.03(A)(5) (Count 4), one

count of gross sexual imposition in violation of Ohio Revised Code § 2907.05(A)(4)

(Count 5), and one count of rape in violation of Ohio Revised Code § 2907.02(A)(2)

(Count 7). (*Id*. at Ex. 2, #51–52). Roughly a month later, Green pleaded guilty to

Counts 1 and 6, each of which carried a maximum prison term of 10 years. (*Id*. at Ex.

10, #63).[1] On June 28, though, he moved to withdraw that plea, based on "new

exculpatory evidence that had been discovered." (*Id*. at Ex. 22, #93). But at a July 22

hearing, he withdrew that motion. (*Id*.). On July 31, 2013, the state court sentenced

---

[1] Green pleaded guilty under Ohio Revised Code § 2970.02(A)(1)(c), rather than
§ 2970.02(A)(1)(b), the statute the grand jury indictment charged him with violating. (*Id*.).

him to nine years imprisonment on each count, to be served concurrently. (*Id.* at Ex. 19, #88).

Green did not file a timely direct appeal, but roughly a year after his sentencing, he began filing several pro se motions. First, despite his guilty plea, on June 6, 2014, he moved to dismiss the Indictment under Ohio Rule of Criminal Procedure 48(B). (*Id.* at Ex. 22, #92). The state trial court denied that motion. (*Id.* at Ex. 25, #145). He did not appeal that denial.

Soon after, on July 29, 2014, he filed his first pro se motion to withdraw his guilty plea under Ohio Rule of Criminal Procedure 32.1. (*Id.* at Ex. 26, #146). On November 13, 2014 (a date important to Green's argument regarding the timeliness of this habeas petition), the trial court denied that motion. (*Id.* at Ex. 30, #193). Green appealed that denial, but the Twelfth District Court of Appeals affirmed. (*Id.* at Ex. 38, #270–83). After the appeals court also denied motions to certify a conflict and for reconsideration (*id.* at Ex. 46, #319–23), Green appealed to the Supreme Court of Ohio, which declined jurisdiction. *State v. Green*, 143 Ohio St.3d 1502 (2015). (*Id.* at Ex. 50, #350).

Green then filed his first petition for postconviction review on December 11, 2015, under Ross County Common Pleas Court Case No. 15CI 547. The court denied that petition on April 19, 2016. *(Id.* at Ex. 87, #674). Green did not appeal.

After that, Green filed a second pro se motion to withdraw his guilty plea on May 16, 2016. (Doc. 6, Ex. 51, #351). The trial court also denied that motion (*id.* at Ex. 57, #395) and the appellate court affirmed that judgment. *State v. Green*, 2017-

Ohio-2800 (Ohio App. 12th Dist. 2017); (Doc. 6, Ex. 62, #453–59). The Twelfth District once again denied motions to certify a conflict and for reconsideration (Doc. 6, Ex. 69, #501–02; *id.* at Ex. 70, #503–04) and Green did not appeal further.

Green did, however, move for leave to file a delayed direct appeal of his conviction on August 14, 2017. He claimed he was not notified of his appellate rights at his sentencing hearing. (Doc. 6, Ex. 81, #648–59). The appellate court denied Green's motion to file a delayed direct appeal and dismissed the appeal on September 12, 2017, another date that figures into his statute of limitations argument here. (*Id.* at Ex. 84, #664). He did not appeal that denial to the Supreme Court of Ohio.

Next, Green moved for a new sentencing hearing. (*Id.* at Ex. 71, #505). Once again, the trial court denied relief, Green appealed, and the appellate court affirmed. *State v. Green,* 12th Dist. Butler Cty. No. CA2018-03-051 (Aug. 6, 2018); (Doc. 6, Ex. 79, #644). Green did not appeal the appellate court's ruling to the Supreme Court of Ohio.

Then, on March 15, 2019, Green filed a second petition for state postconviction review—this time in the Ohio Court of Appeals for the Fourth District. (*Id.* at Ex. 88, #678–728). After that court denied relief (*id.* at Ex. 91, #749–53), Green appealed and the Supreme Court of Ohio affirmed. *Green v. Shoop*, 159 Ohio St.3d 439 (2020); (Doc. 6-1, #872–75).

## B. The Federal Court Proceedings

Green then shifted his focus to federal court. On May 11, 2020, he mailed his Petition for Writ of Habeas Corpus to this Court. (Doc. 1, #31 (showing the

postmarked envelope)). The Petition, which he filed pro se, is not the model of clarity. But it pleads three grounds for relief. First, he says the trial court lacked jurisdiction to convict Green, because the prosecution did not file a "complaint or affidavit" before arresting him as Ohio law requires, therefore presumably rendering the remainder of his criminal proceedings void. (*Id*. at #8). Second, he alleges his plea was not knowing and voluntary because the trial court was threatening a severe sentence if he did not plead, leaving him "under duress and with no real choice," thereby violating the Fifth, Sixth, and Fourteenth Amendments. (*Id*. at #11). Finally, he argues that the state violated his due process and equal protection rights under the Fourteenth Amendment because neither the sentencing court nor his counsel originally informed him of his appellate rights, and when he later tried to file a delayed appeal, the courts said no. (*Id*. at #13).

On January 13, 2021, the Magistrate Judge issued an R&R that recommended dismissing the Petition with prejudice because all three claims are time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). (Doc. 15, #1061). The R&R also recommended alternate grounds for dismissal: that Grounds One and Three lack merit, and that all three grounds are procedurally defaulted. (*Id*. at #1064, 1069, 1071).

Green raised four objections to the R&R's conclusion that AEDPA's statute of limitations barred his claims. (Doc. 18, #1080–83). According to Green, the Magistrate Judge (1) misread what Green said in his filings (*id*. at #1080–81), (2) incorrectly determined that *DiCenzi v. Rose*, 452 F.3d 465 (6th Cir. 2006), did not

entitle Green to relief (*id.* at #1081), (3) incorrectly concluded that Green's state court filings did not toll the statute of limitations (*id.* at #1082), and (4) failed to consider that Green had needed to exhaust his state court remedies (thus justifying the delay in filing his federal habeas petition) (*id.* at #1082–83).

The then-assigned judge recommitted the matter to the Magistrate Judge to consider Green's objections. (Doc. 19). The Magistrate Judge issued a Supplemental R&R recommending overruling the objections and suggesting the same conclusion as the initial R&R: the Petition was time-barred. (Doc. 20, #1093). Green objected again. (Doc. 21). His objections to the Supplemental R&R's analysis of the statute of limitations issue are substantially the same as his objections to the original R&R. (Doc. 21, #1096–102). The Warden responded, asserting that "Green's non-specific, non-responsive, and repetitive arguments are not proper 28 U.S.C. § 636(b)(1)(C) objections, and Green has not shown that the Magistrate Judge's Supplemental Report & Recommendation is clearly erroneous or contrary to law." (Doc. 22, #1106).

The matters are ripe for the Court's review.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 72(b)(3), "district courts review a report and recommendation de novo after a party files a timely objection.*" Bates v. Ohio Dep't of Rehab. & Corr.*, No. 1:22-cv-337, 2023 WL 4348835, at *1 (S.D. Ohio July 5, 2023). But that de novo review requirement extends only to "any portion to which a proper objection was made." *Id.* (citation omitted). In response to such an objection, "the district court may accept, reject, or modify the recommended disposition; receive

further evidence; or return the matter to the magistrate judge with instructions." *Id.* (quoting Fed. R. Civ. P. 72(b)(3)) (cleaned up).

By contrast, if a party makes only a general objection, that "has the same effect[] as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). A litigant must identify each issue in the report and recommendation to which he objects with sufficient clarity for the Court to identify it, or else the litigant forfeits the Court's de novo review of the issue. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) ("The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious.").

That said, Green is proceeding pro se. A pro se litigant's pleadings should be construed liberally and are subject to less stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require the lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

For unobjected portions of the R&R, "the advisory committee notes to Federal Rule of Civil Procedure 72(b) suggest that the Court still must 'satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (collecting cases).

And importantly, while courts need not review unobjected portions of the R&R de novo, nothing precludes them from doing so. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985) ("[W]hile [28 U.S.C. § 636(b)(1)(C)] does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.").

## LAW AND ANALYSIS

The Magistrate Judge begins his analysis by addressing the statute of limitations issue, which applies to all three grounds for relief. (Doc. 15 #1056–61). And he finds that the statute of limitations bars Green's claims. He then also provides alternate grounds for dismissing those claims: a lack of merit (Grounds One and Three) and procedural default (all three grounds). (*Id.* at #1061–73). The statute of limitations issue, though, along with the inapplicability of equitable tolling, is dispositive. Accordingly, the Court will discuss only the statute of limitations and equitable tolling issues and will not address the Magistrate Judge's alternate reasons for recommending dismissal or their attendant objections. And the Court elects to review the issue de novo, meaning the Court will consider all arguments that Green made, whether initially or in his objections.

### A.    The Statute of Limitations

Green asserts his petition is timely for a combination of two reasons: (1) AEDPA's statute of limitations began to run later than the Magistrate Judge claimed; and (2) Green is entitled to tolling that suffices to cover the remaining gap.

As to the first of those, Green asserts that the "trigger date"—that is, the date when the statute of limitations began running—for Grounds One and Two (the conviction-based claims) is November 13, 2014, when the trial court denied his motion to withdraw his plea. (Traverse, Doc. 11, #1030). For Ground Three (the appeal-based claim), Green asserts a trigger date of September 12, 2017. (*Id.* at #1028). As for his tolling theory, Green argues that he is entitled to statutory and equitable tolling for all three claims. (*Id.* at #1028–31). Green does not make any actual innocence argument.

AEDPA governs Green's claim. Pub. L. No 104-132, 110 Stat. 1214. As relevant here, that statute provides:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; … or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## 1. The Trigger Dates

The first step in analyzing a statute of limitations argument is determining the appropriate trigger dates—when did the limitations period begin running? Under AEDPA's plain language, the answer appears straightforward. For claims where the

facts underlying the claim are known to the defendant at the time of conviction, the clock begins ticking upon the conclusion of direct review of the criminal conviction. 28 U.S.C. § 2244(d)(1)(A). For claims where the facts underlying the claim are *unknown* to the defendant at the time of conviction, the clock starts to run when the defendant could have discovered those facts with due diligence. *Id*. at § 2244(d)(1)(D).

Green's conviction-based claims (Grounds One and Two) fall into the former category. So, absent extenuating circumstances, the trigger date for those grounds is August 30, 2013—when Green's opportunity for direct review of his conviction lapsed.[2] Green's appeal-based claim (Ground Three) arguably falls into the latter category. He alleges that the trial court did not inform him at his sentencing, and he did not know, of his right to appeal his conviction, and that therefore the factual predicate of his third ground for relief (the denial of his right to an appeal) occurred when the state court denied leave to file a late appeal on September 12, 2017. (Doc. 1, #12–13, 15). Assuming the factual predicate of his claim was actually when the Twelfth District Court of Appeals denied leave to file a belated appeal (which the Court doubts[3]), Green is correct as to the trigger date for Ground Three. *See DiCenzi*

[2] Green's conviction became final when he was sentenced on July 31, 2013. He then had 30 days to appeal that conviction under Ohio Rule of Appellate Procedure 4(A)(1). Because he did not appeal his conviction, the AEDPA clock started upon the "expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). So his clock started 30 days after July 31, 2013: August 30, 2013.

[3] Green claims he was not informed of his appellate rights at the sentencing hearing. But the record belies that assertion. Green signed a plea form indicating that he understood his right to appeal. (Doc. 6, #63–64). He also (1) admitted in open court that he signed the guilty plea form, and (2) "had a full and fair opportunity to read, review, and discuss" the plea form with his attorney. (Doc. 6-2, #907, 915). That suffices to show that the court informed him of his appellate rights. *Kelley v. Brunsman*, 625 F. Supp. 2d 586, 600 (S.D. Ohio 2009) ("[P]etitioner signed a guilty plea agreement indicating he understood the nature of the charges … [T]he

*v. Rose*, 452 F.3d 465, 468 (6th Cir. 2006) (holding that the trigger date for a claim asserting a denial of the right to appeal was when the state court denied leave to file the delayed appeal).

Green argues for later trigger dates for the conviction-based claims (Grounds One and Two). He contends that the trigger date for those claims should be November 13, 2014. (Doc. 11, #1030). That is the date when the state trial court denied his Ohio Crim R. 32.1 motion to withdraw his plea and did so at least partially on the ground that he could have made the same arguments on direct appeal but failed to do so. (Doc. 6, #198). Green contends that this trial court order is what first made him aware of his right to appeal and that *that* knowledge (that he had a right to appeal) is somehow the factual predicate for his involuntary plea claim and lack of jurisdiction claim. (*See* Doc. 11, #1030; Doc. 18, #1080–81 (stating that Green exercised due diligence in "discovering his right to appeal, the factual predicate of his conviction based [sic] claims")).

That argument doesn't work. His substantive conviction-based constitutional claims are that (1) the trial court lacked jurisdiction to convict him, and (2) his plea was unknowing or involuntary. (Doc. 1, #7–12). The factual predicate for the first

---

guilty plea and sentencing transcript confirms that petitioner read, understood, and discussed with his counsel the guilty plea … [I]t is clear that petitioner was informed and aware of his appellate rights."). If the Court understands his claim to allege a generalized denial of his right to appeal based on his lack of knowledge of his appellate rights, one could argue that Green could have known of the factual predicate of his claim the day he was sentenced. In that case, the clock would start on July 31, 2013. If on the other hand his claim is that the denial of a *delayed* appeal violated the Constitution, then that predicate did not occur until September 12, 2017. Using either trigger date, Green's appeal-based claim was untimely.

occurred when the court exercised jurisdiction, and certainly no later than when it sentenced him on July 31, 2013 (because that is when the supposed damage was done). And as for the second, he appears to claim that his plea was not knowing or voluntary because he felt "under duress" and that he had "no real choice," because the judge had indicated that if Green did not accept the plea deal he would most likely "sentence [Green] to the maximum on both charges and run the sentences consecutively." (Doc. 1, #11). Of course, by Green's own admission, those facts were known to him at the time of his plea. So because he knew the factual predicate of his claims well before the conclusion of direct review of his conviction, AEDPA automatically chooses that later date—August 30, 2013. *See* 28 U.S.C. § 2244(d)(1) (the statute of limitation runs "from the latest of" the listed events).

Green argues for a later "actual knowledge" date as to Ground One, because he claims that he did not know that the criminal complaint that led to his arrest in January of 2013 was defective. In particular, he highlights the fact that the criminal complaint attached to the state court record does not contain the substance of the testimony allegedly supporting the complaint, and that the complaint is dated February 7, 2013, rather than January 23, 2013, when the complaint allegedly issued. (Doc. 6, #46).

That argument fails regardless of whether the complaint was defective.[4] To the extent that the complaint was defective, presumably Green's counsel would have

---

[4] The document to which Green points is labeled "Transcript – Criminal Docket." In other words, the document does not even necessarily purport to be the actual criminal complaint. Rather, it appears to be a record of the various preliminary matters related to that complaint. (For example, the bottom portion contains reference to the preliminary hearing date, bond

known that. And information known to a defendant's counsel is imputed to the defendant. *See Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013) ("When a lawyer represents a client, his acts become the client's acts, his knowledge the client's knowledge."); *Lollis v. Warden, Ohio State Penitentiary*, No. 15-CV-703, 2016 WL 3619360, at *3–4 (N.D. Ohio July 6, 2016) (footnote omitted) (relying on *Lampe* in the habeas context). True, assuming both (1) that the defect had legal significance, and (2) that Green's counsel did not share (or learn) that knowledge, that may give rise to an ineffective assistance claim. But it does not change that Green is charged with knowledge of the defective complaint (if it indeed was defective) in the first instance. And Green has not made an ineffective assistance claim. So, even assuming the complaint was defective, he cannot lay claim to a later trigger date for his claim that the trial court lacked jurisdiction.

Separately, Green's citation to *Dicenzi* does not help him. (Doc. 18, #1081 (citing *Dicenzi*, 452 F.3d at 465)). That case involved a man who pleaded guilty to vehicular homicide and received the maximum sentence under Ohio law. 452 F.3d at 466–67. Although the defendant was unaware of it, Ohio law provided a non-waivable right to appeal a maximum sentence, regardless of whether the defendant pleaded guilty. *Id.* When he learned of his non-waivable right, the defendant sought leave to file a delayed appeal. *Id.* at 467. The Ohio court of appeals denied him leave. *Id.* The defendant eventually brought a federal habeas claim, arguing that the state appellate

---

information, etc.) So, it offers no support for Green's argument that the criminal complaint *itself* was invalid. But the Court need not determine the validity of the complaint because Green's argument fails even if the complaint was defective.

court's refusal to allow him to file a delayed appeal violated the Constitution. *Id.* The Sixth Circuit, for AEDPA timeliness purposes, held that the trigger date for that claim was when the Ohio court of appeals denied leave to appeal. *Id.* at 468.

But *Dicenzi* is limited to claims based on the denial of leave to appeal (Green's Ground Three), not substantive constitutional claims rooted in the defendant's criminal conviction. *Dicenzi* has nothing to say about when the factual predicate for a jurisdictional or involuntary plea claim occurs. Accordingly, Green's trigger date for his conviction-based claims is still the day direct review concluded—August 30, 2013.

Based on these trigger dates, all three of Green's claims are untimely. For Grounds One and Two, the clock began to run on August 30, 2013. Assuming no tolling, 2,446 days elapsed between the trigger date and Green filing his federal petition (May 11, 2020). This is far outside the one-year window.

For Ground Three, the trigger date admittedly is later, but the claim is still untimely. To the extent that Green's claim rests on the notion that the state court's denial of leave to file a delayed appeal independently violated the Constitution, the factual predicate for that claim, as stated above, occurred the date the state court denied leave to appeal—September 12, 2017. *See DiCenzi*, 452 F.3d at 468. But that means the statute of limitations would have expired 365 days later, on September 12, 2018. And Green did not raise his appeal-based claim until May 11, 2020—607 days after September 12, 2018. This also falls outside the one-year window.

In sum, based on the trigger dates for Green's claims, his habeas petition is untimely under AEDPA assuming no tolling. The Court thus proceeds to the tolling issue.

### 2. Tolling Does Not Help Green

Two types of tolling potentially apply to AEDPA claims—statutory and equitable. Take them in order.

### a. Statutory Tolling

Statutory tolling arises because "[t]he time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2). As the language suggests, though, tolling occurs only when a motion is "properly filed." "A petition is properly filed when 'its delivery and acceptance are in compliance with the applicable laws and rules governing legal filings.' *Hardin v. Genovese*, No. 21-5867, 2023 WL 1992036, at *2 (6th Cir. Feb. 14, 2023) (citing *Artuz v. Bennett*, 531 U.S. 4, 8 (2000)). A state time bar is a rule that governs legal filings. *See id.* at *3 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

With respect to the issues he raises in Grounds One and Two, Green "properly filed" his motion to withdraw his guilty plea under Ohio Rule of Criminal Procedure 32.1. He filed that motion on July 29, 2014, (Doc. 6, Ex. 26, #146), pausing the AEDPA clock until the state court system finally adjudicated the motion. The state trial court did its part, denying the motion on the merits. *(Id.* at Ex. 30, #193). The Twelfth

15

District Court of Appeals then followed suit, affirming that decision on the merits. (*Id.* at Ex. 38, #270–83). And that decision became final when the Ohio Supreme Court declined jurisdiction on October 28, 2015. *State v. Green*, 143 Ohio St.3d 1502 (2015). (*Id.* at Ex. 50, #350). Because none of the Ohio courts disposed of the motion as improperly filed, Green is entitled to statutory tolling from the date of filing—July 29, 2014—through October 28, 2015, when the Ohio Supreme Court declined jurisdiction. *See* 28 U.S.C. § 2244(d).

But Green's other motions do not provide any additional statutory tolling. Green's motion to dismiss his indictment, for example, which he filed on June 9, 2014, and which the court decided on November 13, 2014, was not properly filed because the state court found that it was untimely. (Doc. 6, Ex. 25, #141–45); *Pace*, 544 U.S. at 417 ("[T]ime limits, no matter their form, are 'filing' conditions."). And his subsequent filings were either filed and adjudicated during the tolling period for his motion to withdraw his guilty plea (meaning that they did not provide him any additional tolling), or they were filed after the statute of limitations had expired.

Green is therefore entitled to statutory tolling from July 29, 2014, to October 28, 2015. But recall the original trigger date for these two claims was August 30, 2013. That means that 333 days of AEDPA's one-year statute of limitations had already passed by the time tolling started on July 29, 2014. So when the tolling ended on October 28, 2015, only 32 days of the one-year limitations period remained. But Green's next filing after that date—his postconviction petition—did not occur until December 11, 2015, some 44 days later. So that filing occurred 12 days *after the*

statute of limitations expired. (Doc. 6, Ex. 87, #674). The same goes for any remaining motions that Green filed following his postconviction petition. Even assuming those filings were "proper," there was no limitations period left to toll. Tolling, after all, cannot revive an already time-barred claim. *See Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001). So, considering only statutory tolling, the statute of limitations for Grounds One and Two expired on November 29, 2015, 32 days after the decision on the motion to withdraw his guilty plea became final.

Green argues otherwise, but only because he says he is entitled to a later *trigger date* for his conviction-based claims. Assuming a trigger date of November 13, 2014 (which is what Green argues for), the 333 days referred to immediately above would not have elapsed before Green moved to withdraw his guilty plea on July 29, 2014. So, he argues, with those 333 days still in the bank when the denial of that motion became final on October 28, 2015, his later filings that were timely would still have a remaining AEDPA limitations period on which to act. (*See* Doc. 21, #1101 ("The AEDPA clock cannot run while it has not started … As of [November 29, 2015], zero days had elapsed.")) But, as discussed above, Green is wrong about the trigger date, and using the correct trigger date the statute of limitations period expired (as described above) before his December 11, 2015, filing. So his statutory tolling argument as to Grounds One and Two fails on the facts.

As to Ground Three, Green was not entitled to statutory tolling for one simple reason. He cannot point to any "properly filed" motion that would have tolled the period. His two candidates are (1) his appeal of his resentencing denial, which he filed

March 9, 2018, and (2) his Ohio Supreme Court postconviction appeal, which he filed August 1, 2019. The problem is that he properly filed neither. When denying Green's appeal of resentencing denial, the Twelfth District Court of Appeals held, without elaboration, that Green's "assignments of error [we]re overruled on the basis of *State v. Watkins*, 12 Dist. Butler No. CA20170-05-066, 2018-Ohio-45; and R.C. 2953.21(A)(2)." (Doc. 6 Ex. 79, #644). But relying on *Watkins* and R.C. 2953.21(A)(2) necessarily means that the appeals court determined that Green's petition was *untimely*. *See Watkins*, 2018-Ohio-45, at ¶ 15 ("[W]e find no error in the trial court's decision for its [sic] clear that Watkins' motion, properly recast as a petition for postconviction relief, was untimely and otherwise barred by the doctrine of res judicata."); Ohio Rev. Code § 2953.21(A)(2)(a) (requiring petitions to be filed within 365 days of the expiration of the right to appeal the conviction if no appeal is taken). And, as stated above, untimely petitions are not "properly filed" for AEDPA purposes, so they do not toll AEDPA's statute of limitations. *Pace*, 544 U.S. at 417. Accordingly, the statute of limitations for Ground Three lapsed on September 12, 2018. And Green filed the Ohio Supreme Court state postconviction petition in 2019, after the statute of limitations had expired. So the claim was already time-barred at that point and subsequent filings, even if "proper," could not revive it.

In short, considering only statutory tolling, Green filed his petition as to Grounds One and Two 1,625 days (over four years) late, and as to Ground Three 607 days (about a year and a half) late.

### b. Equitable Tolling

Perhaps all is not lost, though. Along with statutory tolling, a petitioner can, in appropriate circumstances, lay claim to equitable tolling. But those circumstances are narrow. Although "§ 2244(d) is subject to equitable tolling," *Holland v. Florida*, 560 U.S. 631, 645 (2010), that relief is granted sparingly, *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir. 2011). "A habeas petitioner is entitled to equitable tolling only if two requirements are met." *Id.* He must show that (1) "he has been pursuing his rights diligently" and (2) "some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (cleaned up). Pro se status, limited law library access, lack of knowledge, and lack of access to trial transcripts are not extraordinary circumstances that excuse late filing. *Id.* at 751–52; *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012).

Applying those standards here, Green is not entitled to equitable tolling as to any of his three grounds. First, "[t]he petitioner bears the burden of demonstrating his diligence." *Moore v. Brown*, No. 21-1514, 2022 WL 3572979, at *3 (6th Cir. Aug. 19, 2022) (unpublished) (citing *DiCenzi*, 452 F.3d at 471). And Green has not shown that he was diligent. He made various requests for legal assistance and sought copies of his transcripts, but he did not file his first state action until June 9, 2014. (Doc. 1, #16).

Second, and more importantly, Green he has not shown an extraordinary circumstance that prevented him from filing his habeas petition to satisfy the second

prong. Therefore, Green cannot prevail on either equitable or statutory tolling even if the Court determines that he pursued his rights diligently.

Green says that is not right. He claims an entitlement to equitable tolling based on three arguments: (1) transcript delays (Doc. 1, #16); (2) lack of prison law library access (*id.* at #16–17); and (3) efforts to secure counsel (*id.* at #16; Doc. 11, #1029). He is wrong as to each. First, "the unavailability of or delay in receiving transcripts is not enough to entitle a habeas petitioner to equitable tolling." *Hall*, 662 F.3d at 750–51. Second, a pro se petitioner's lack of legal knowledge and limited law library access are similarly inadequate. *Id.* at 751; *Keeling*, 673 F.3d at 464. And any alleged error by Green's counsel or the state courts in failing to inform him of his appellate rights would not change this determination because neither error constitutes a state-created impediment to filing a federal habeas petition. *Jurado v. Burt*, 337 F.3d 638, 644–45 (6th Cir. 2003); *Miller v. Cason*, 49 F. App'x 495, 497 (6th Cir. 2002) (unpublished). Finally, his failure to secure representation does not constitute an extraordinary circumstance justifying equitable tolling because, as discussed above, pro se status is not an extraordinary circumstance. So even if the Court were to consider Green's efforts to secure representation sufficient diligence to satisfy the first prong of the equitable tolling analysis, Green has not shown that he satisfies the second prong of that analysis.

That leaves only one outstanding issue: whether Green's need to exhaust state court remedies should excuse his tardily filed federal habeas petition. (Doc. 18, #1082–83). The Court concludes it should not. Had Green filed his habeas corpus

petition within the specified limitations period, the Court could have stayed that petition pending the outcome of state exhaustion efforts. *Rhines v. Weber*, 544 U.S. 269, 277–79 (2005). Alternatively, if the petition was a so-called mixed petition, containing both exhausted and unexhausted claims, the Court could have dismissed it, entitling Green to "mandatory equitable tolling" for the time needed to return to state court, exhaust the unexhausted claims, and then refile in federal court. *See Bozsik v. Bagley*, 534 F. Appx. 427, 430 (6th Cir. 2013) (citing *Palmer v. Carlton*, 276 F.3d 777 (6th Cir. 2002)). In short, Green had options, but not the option to just wait years based on a claimed need to further exhaust, and then file. So the Court will not excuse Green's tardiness based on his claim that he needed to exhaust state court remedies.

Green disagrees with the Magistrate Judge's interpretation of *Rhines* and claims that he "was still required to exhaust all of his state remedies prior to seeking habeas relief." (Doc. 18, #1082–83). But, once again, Green is the one who has misunderstood the law. Yes, "stay and abeyance should be available only in limited circumstances … [and] is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Rhines*, 544 U.S. at 277. But "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. And nothing else in *Rhines* suggests that Green would have been

precluded from filing his federal habeas corpus petition within the limitations period if his claims were potentially meritorious.

In short, then, none of Green's objections persuade the Court to disagree with the Magistrate Judge's recommendation to dismiss the Petition. Therefore, the Court will dismiss Green's Petition as time-barred.

## B. Appeal Of This Opinion

Next, the Court must decide whether to issue a certificate of appealability and whether an appeal of this Opinion would be in good faith. Start with the certificate of appealability. A court may grant a certificate of appealability only if the applicant "has made a substantial showing of the denial of a constitutional right." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (quoting 28 U.S.C. § 2253(c)(2)); *see also id.* at 349 (Scalia, J. concurring) ("A 'substantial showing' *does not entitle* an applicant to a COA; it is a necessary and not a sufficient condition.") (emphasis in original). That standard is met when the movant demonstrates "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id.* at 327. The Court concludes that Green has not shown denial of a constitutional right, and that reasonable jurists could not disagree with its conclusion here—the statute of limitations issue is clear and dispositive. So the Court denies Green a certificate of appealability.

Finally, the Court considers whether to certify that an appeal of this decision would be in good faith. That certification matters because "[a]n appeal may not be

taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith." 28 U.S.C. § 1915(a)(3). "A frivolous appeal, one that lacks an arguable basis either in law or in fact, would not be taken in good faith." *Tallent v. Knight*, No. 22-5126, 2022 WL 18862074, at *2 (6th Cir. Sept. 7, 2022), *cert. denied*, 143 S. Ct. 793 (2023) (cleaned up). The Court certifies that an appeal would not be in good faith for the same reason it declined to issue a certificate of appealability. The statute of limitations issue is clear and dispositive and Green's arguments to the contrary do not have an arguable basis in law or fact. Therefore, an appeal of this Opinion would not be in good faith.

## CONCLUSION

For the above reasons, the Court **OVERRULES** Green's Objections (Docs. 18, 21) and **ADOPTS** both the R&R (Doc. 15) and the Supplemental R&R (Doc. 20). The Court thus **DISMISSES** Green's Petition (Doc. 1) **WITH PREJUDICE**. The Court also **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this Opinion would not be made in good faith, thereby **DENYING** Green leave to appeal in forma pauperis**.** Finally, it **DENIES** Green a certificate of appealability pursuant to § 28 U.S.C. § 2253(c)(2). The Court **ORDERS** the Clerk to enter judgment and **TERMINATE** this matter on the Court's docket.

**SO ORDERED.**

December 20, 2023
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**